**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD HOOKWAY<br>403 Bridge Street<br>Spring City, PA 19475<br><br>Plaintiff,<br><br>v.<br><br>EASTERN TECHNOLOGIES, INC<br>60 Thousand Oaks Blvd.<br>Morgantown, PA 19543<br><br>Defendant. | CIVIL ACTION<br><br>NO.: ________________<br><br>**JURY TRIAL DEMANDED** |

## **CIVIL ACTION COMPLAINT**

Richard Hookway (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## **INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Eastern Technologies, Inc., (hereinafter referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), the Pennsylvania Human Relations Act ("PHRA"), and Pennsylvania common law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## **JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law(s). There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

6. Plaintiff has properly exhausted his administrative remedies regarding his PHRA claims by dual-filing his Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and by waiting at least one year since the filing before asserting his PHRA claims.

## PARTIES

7. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

8. Plaintiff is an adult who resides at the above-captioned address.

9. Defendant Eastern Technologies, Inc. is a corporation engaged in the business of providing protective clothing, waste-management, and related safety and compliance products and

services to customers in the nuclear and industrial sectors, with headquarters at the above-captioned address.

10. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

12. Plaintiff began his employment with Defendant in or about April 2022 as a shipping and receiving employee, working from Defendant's above-captioned location, until his unlawful termination on or about February 26, 2025 (discussed in more detail *infra*).

13. As part of his shipping and receiving position, Plaintiff's responsibilities included receiving shipments, delivering received shipments to the appropriate location, loading trucks, and packaging and palletizing products.

14. Plaintiff was primarily supervised by Director of Operations, Burns Weaver (hereinafter "Weaver").

15. During Plaintiff's tenure with Defendant, Plaintiff consistently demonstrated a strong work ethic and performed his job duties diligently and with a high level of competence.

16. On or about January 30, 2025, Plaintiff suffered serious work-related injuries, including an injury to his right knee (a right knee ligament tear), after slipping on ice in Defendant's parking lot on the way back from disposing of trash in a dumpster.

17. Plaintiff immediately experienced pain in his right knee and informed Weaver of his work-related injuries/serious health conditions.

18. Plaintiff also asked Weaver for medical treatment for his work-related injuries that same day.

19. The next day, on or about January 31, 2025, Plaintiff was evaluated at Defendant's worker's compensation healthcare provider, Concentra (hereinafter "Concentra").

20. Following the aforesaid medical evaluation for his work-related injuries/serious health conditions at Concentra, Plaintiff continued to experience significant pain and limitations involving his right knee.

21. Thereafter, Plaintiff requested his worker's compensation claim number from Weaver, which was necessary for his medical treatment.

22. However, Weaver failed and/or refused to provide Plaintiff with his claim number, which Plaintiff subsequently discovered was due to Defendant not properly filing a worker's compensation claim on his behalf (discussed further *infra*).

23. As a result of his aforesaid work-related injuries/serious health conditions, Plaintiff suffered from pain, mobility issues, and sleeplessness; which (at times) limited his ability to perform some daily life activities, including but not limited to sleeping, walking and moving without pain, bending, and working (among other daily life activities).

24. Despite Plaintiff's aforesaid work-related injuries/serious health conditions and resulting limitations, Plaintiff was capable of performing the essential functions of his position; however, he (at times) required some reasonable medical accommodations.

25. For example, on or about February 3, 2025, Plaintiff returned to Concentra for a follow-up evaluation, where he requested an MRI because his right knee remained significantly painful. However, Plaintiff's request for an MRI was outright denied.

26. Following the aforesaid February 3, 2025 evaluation, Defendant's worker's compensation doctor released Plaintiff to modified and/or light-duty work subject to medical restrictions, including but not limited to a twenty (20)-pound lifting restriction, limitations on

bending, standing, squatting, and kneeling, use of a brace on his right leg, and a restriction against climbing ladders.

27. Nonetheless, because Plaintiff remained in severe pain, could hardly put pressure on his right knee, and continued experiencing swelling and mobility limitations, he requested additional time off from work (a reasonable accommodation under the ADA) until his previously scheduled vacation that begin on or about February 10, 2025, which Weaver approved.

28. During his scheduled vacation, Plaintiff continued resting and caring for his work-related injuries/serious health conditions as much as possible.

29. Thereafter, on or about February 17, 2025, Plaintiff returned to Concentra for another follow-up evaluation, at which time he was released to return to work subject to continued temporary light-duty restrictions, including restrictions on lifting, walking on uneven terrain, and climbing, as well as the continued use of a knee brace.

30. Plaintiff thereafter returned to work, but by the end of the week, he was struggling to walk, and his knee was swollen and in so much pain that he could barely get out of his car.

31. Despite advising Defendant of the continuation of his aforesaid light-duty medical restrictions, and providing a note for the same, Plaintiff was required to work against his light-duty restrictions.

32. For example, Plaintiff was required to wrap and band pallets, perform customer pickups, load trucks, and repeatedly climb in and out of a forklift (approximately 3 ft. off the ground) 30-40 times a day.

33. The aforementioned repeated climbing in and out of the forklift, as well as the bending and lifting associated with wrapping and banding pallets, caused Plaintiff significant additional pain and difficulty, thereby exacerbating his work-related injuries/serious health conditions.

34. Plaintiff informed Weaver that the physical demands of his assigned duties, including repeatedly climbing in and out of the forklift and bending and lifting while wrapping and banding pallets, were causing him additional pain and difficulty due to his work-related injuries.

35. Rather than modifying Plaintiff's job duties, Plaintiff's supervisor advised him that his restrictions would remain unchanged and that, if he experienced pain or difficulty, he should simply sit down for a couple of minutes before resuming his work.

36. As a result of the exacerbation of his aforesaid work-related injuries/serious health conditions, Plaintiff requested the ability to obtain a second medical opinion through Defendant's worker's compensation provider.

37. However, instead of providing Plaintiff with the ability to obtain a second medical opinion (another reasonable accommodation under the ADA), Defendant informed Plaintiff that he would be required to pay for the second opinion himself, unless the physician determined that there was "really" an issue with Plaintiff's knee – a discriminatory and retaliatory insinuation that Plaintiff was not really disabled and/or faking his injuries.

38. In actuality, Defendant was attempting to avoid filing a worker's compensation claim and its mandatory obligations under the law, despite that Plaintiff had asked for the same, and Plaintiff was eventually required to find a worker's compensation attorney to file the same.

39. However, instead of granting Plaintiff's reasonable request for a second opinion, Defendant thereafter scheduled another follow-up appointment with Concentra on or about February 24, 2025.

40. At that time, Plaintiff's aforesaid work-related injuries/serious health conditions had continued to worsen, with the worker's compensation doctor still refusing to send Plaintiff for an MRI.

41. Plaintiff was also particularly concerned about additional potential complications because he had previously suffered from blood clots in his left knee/leg.

42. On or about February 24, 2025, however, Plaintiff was experiencing such severe pain and difficulty placing pressure on his right knee that he reported off from work and was unable to attend the worker's compensation follow-up appointment Defendant had scheduled for him.

43. On or about February 25, 2025, Plaintiff again reported off from work because of his continued severe knee pain and inability to place sufficient pressure on his right knee.

44. Nevertheless, immediately thereafter, Weaver abruptly terminated Plaintiff's employment on or about February 26, 2025, purportedly because Plaintiff had committed "no-call, no-shows" on February 24 and February 25, 2025.

45. Plaintiff was then provided with a letter from Defendant's Human Resources ("HR") department, stating that he was being terminated for alleged attendance issues, despite that the majority (if not all) of Plaintiff's time off leading up to his termination was for his aforesaid work-related injuries/serious health conditions.

46. Defendant's purported reason for Plaintiff's termination was completely false and pretextual, as Plaintiff had called off by putting his time properly in Defendant's work app, Paylocity, which had been approved by Weaver.

47. Rather, there is no doubt that Plaintiff was terminated as a result of his aforesaid work-related injuries/serious health conditions, requested accommodations, and claim for worker's compensation benefits, as he was terminated ***just one day after*** requesting and/or utilizing time off from work for his medical conditions and while still out on medical leave.

48. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, retaliation, and terminated because of his (1) actual, perceived, record of health conditions; (2) his requested accommodations; and (3) Defendant's failure to properly

accommodate his medical conditions (*i.e.,* requiring him to work against his light-duty work and/or terminating him while out on medical leave).

49. Plaintiff also believes and therefore avers that his serious health conditions were motivating and determinative factors in the termination of his employment by Defendant.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADAAA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; and [4] Hostile Work Environment)**

50. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

52. Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

53. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require some reasonable medical accommodations at times.

54. Plaintiff requested reasonable accommodations from Defendant including but not limited to (1) light-duty work; and (2) intermittent time off from work for doctor's appointments, testing, and to care for and treat for his aforesaid serious health conditions.

55. Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/or derogatory treatment because of his aforesaid health conditions and requested accommodations.

56. Defendant was terminated from his employment with Defendant on or about February 26, 2025, just a few weeks following the onset of his serious health conditions and ***just***

***one day*** after requesting and/or utilizing reasonable medical accommodations (*i.e.,* time off from work).

57. Defendant failed to properly accommodate Plaintiff's serious health conditions by requiring him to work against his medical restrictions (light-duty work) and terminating him while still on out a brief medical leave of absence to care for and treat the same.

58. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, retaliation, and terminated because of his (1) actual, perceived, record of health conditions; (2) his requested accommodations; and (3) Defendant's failure to properly accommodate his medical conditions (*i.e.,* requiring him to work against his light-duty work and/or terminating him while out on medical leave).

59. Plaintiff also believes and therefore avers that his serious health conditions were motivating and determinative factors in the termination of his employment by Defendant.

60. These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; and [4] Hostile Work Environment**

61. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62. Plaintiff properly exhausted his administrative remedies regarding his PHRA claims because he timely filed a charge of discrimination with the PHRC (by dual-filing his claims with the EEOC) and the charge has been pending for at least one year.

63. The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims set forth in Count I.

## COUNT III
## Common-Law Wrongful Discharge
## (Public Policy Violation)

64. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65. Upon information and belief, Plaintiff was terminated in substantial part for making claims for worker's compensation benefits and/or seeking worker's compensation benefits and/or for his work-related injuries (as discussed *supra*).

66. It is against Pennsylvania's public policy for an employee to be terminated for making worker's compensation claims and/or seeking worker's compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc*., 584 Pa. 297, 883 A.2d 511, 516 (2005).

67. The temporal proximity and retaliatory animus between Plaintiff's claims for worker's compensation and his termination creates an inference that his termination was in retaliation for making such claims. These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff demands a trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: October 16, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Richard Hookway | : | CIVIL ACTION |
| v. | : | |
| | : | |
| Eastern Technologies, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 10/16/2026 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________________________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):________________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*______________ ______________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[ X ] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[   ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HOOKWAY, RICHARD

**(b)** County of Residence of First Listed Plaintiff: Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

EASTERN TECHNOLOGIES, INC.

County of Residence of First Listed Defendant: Berks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(*Do not cite jurisdictional statutes unless diversity*)**: ADA (42USC12101)

Brief description of cause: Violations of the ADA, PHRA and PA Common Law.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 10/16/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______